The STATE of Ohio, Appellee,

v.

WONG, Appellant.

[Cite as *State v. Wong* (1994), 95 Ohio App.3d 39.]

Court of Appeals of Ohio,
Jackson County.

No. 92CA703.

Decided May 12, 1994.

42

*Mark Ochsenbein,* Jackson County Prosecuting Attorney, for appellee.

*Harry R. Reinhart* and *Gary Gerson; Bailey, Fishman & Leonard, F. Lee Bailey* and *Kenneth J. Fishman,* for appellant.

HARSHA, Presiding Judge.

Carrie Wong appeals from the judgment of the Jackson County Court of Common Pleas convicting her of six counts of felonious assault, R.C. 2903.11, and two counts of vandalism, R.C. 2909.05. Appellant assigns five errors which are set forth after a recitation of the facts.

On October 24, 1991, appellant went to Oak Hill Hospital to visit her husband, Dr. Henry Wong, who was on a forty-eight-hour duty shift. She slept for several hours at the hospital and at approximately 9:30 p.m., wanted to leave the hospital. Dr. Wong insisted that appellant was not in a condition to drive and took her car keys from her. Appellant had suffered a miscarriage ten days earlier and apparently had been taking Fiorinal, a barbiturate, to control the pain and uterine contractions. Appellant and Dr. Wong argued and then appellant walked home from the hospital with the couple's twelve-year-old daughter, Patty. Dr. Wong, who could not leave the hospital, sent a hospital security guard to the Wong residence to check on the safety of appellant and Patty. The guard returned to the hospital reporting that no one appeared to be home at the Wong residence. Dr. Wong apparently did nothing to follow up on this report until the next day.

On the morning of Friday, October 25, appellant and Patty discovered that the electricity and phone services to the Wong house were not working, apparently because Dr. Wong had not paid the bills. On Dr. Wong's insistence, a nurse from Oak Hill Hospital and a police officer went to the Wong residence with Dr. Wong's house key. The officer let himself into the house, talked to Patty and appellant and then left.

Later, appellant wrote a letter to Dr. Wong and gave it to Patty, asking her to deliver it to him. Patty walked to the hospital and left the letter on Dr. Wong's

cot in the physician's lounge. Another doctor later found a letter and turned it over to the police. At trial, because neither Patty nor Dr. Wong could definitely identify the writing as appellant's, the trial court refused to admit this apparently prejudicial letter.

At about 2:35 p.m. on October 25, Patty left the Wong house, walked to a pay phone and called 911. She indicated that her mother did not seem well and Patty asked that someone come to help her. Officer Terry Snyder, an Oak Hill police officer, arrived at the Wong residence and knocked on the back door, identifying himself as a police officer. Officer Snyder then heard a shotgun blast which went through the bottom part of the door. Snyder drew his gun, hid behind his cruiser and called for assistance. Shortly afterwards, Officer Dave Ward, Chief of the Oak Hill Police Department, arrived. While he was radioing for help, Officers Snyder and Ward heard another shot, this one hitting Ward's cruiser. At some point, either before or after this second shot, Patty came out of the house, explaining that the dog knocked over the gun. She then went back into the house.

Dr. Wong arrived next and as he approached the back door, a third shot came through the door. This shot did not hit anything, but glass flew from the door landing on Dr. Wong's feet. Dr. Wong tried to run to another door, but officers handcuffed Wong and placed him in a cruiser. Many other law enforcement officers from the village of Oak Hill Police Department, Jackson County Sheriff's Department and State Highway Patrol arrived and completely surrounded the Wong residence.

Officer Ed Conger knocked on the door and tried to talk to appellant. Conger testified that immediately after he knocked on the door, a shot came through the door. He knocked again and another shot came through the door.[1] Sgt. Jim Mannering then went to the door and talked to appellant. While Mannering was standing near the door, a shot came through the door. Pellets from this shot hit Officer Snyder in the face, hit Officer Wells in the arm and damaged the Oak Hill police cruiser. Injuries from this gunshot caused Officer Snyder to lose his right eye and caused blindness in his left eye until surgery restored his sight in February 1992. At some point during this incident, Patty left the house and was placed in a cruiser with Dr. Wong. Patty testified that she had never seen appellant acting the way she was on October 25 and that appellant told Patty to go outside, "before they shoot you too."

---

1. From our review of the transcript, it appears that the door through which appellant shot was located near a corner of the house or garage such that the officers could knock on the door and stand out of the way of the shotgun blasts.

Jackson County Sheriff Hayburn ordered officers to get tear gas to force appellant out of the house. Before the officers could use the tear gas, appellant came out of the house with her shotgun. She shot once through the awning of the house. As appellant was reloading, Sheriff Hayburn realized that the gun was a single shot model, appellant was "out of it," and in her condition, she had a hard time reloading the gun. Appellant took another shot in the direction of Sgt. Mannering and his cruiser, and Officers Robinson, Hall, and Sturgill. Sheriff Hayburn and Chief Penix then rushed appellant, took the shotgun away from her and placed her under arrest. Sheriff Hayburn testified appellant was not in good shape and had either been drinking or was on some kind of medication. Witnesses testified that when she was taken into custody, appellant appeared emotionless and had a blank stare on her face.

Appellant was transported to the Oak Hill Hospital for treatment of a serious laceration in one arm. Records from Oak Hill Hospital indicate appellant was diagnosed as having a paranoid personality and was referred for further psychological evaluation. Officers transported appellant to Riverside Methodist Hospital in Columbus, Ohio, where she was evaluated and released. The Riverside medical records, introduced as state's exhibit 49, include in the discharge instructions: "Recommend further psychiatric treatment and hospitalization."

The Jackson County Grand Jury indicted appellant, charging her with six counts of felonious assault in violation of R.C. 2903.11 and two counts of vandalism, in violation of R.C. 2909.05. Counts one through five included allegations that the victim of the alleged felonious assault was a peace officer, R.C. 2903.11(B), while count six named Dr. Wong as the victim. All eight counts contained gun specifications under R.C. 2929.71. Appellant pleaded not guilty and not guilty by reason of insanity.

At trial, the prosecutor indicated in his opening statement that the defense would be claiming insanity. Appellant abandoned the insanity defense, however, and asked the court to allow two psychologists to testify to establish the defense of diminished capacity. Appellant argued that she had a mental disease which, combined with alcohol and drug ingestion and other stressors, made her unable to possess the necessary *mens rea* for the charged crimes. Citing *State v. Wilcox* (1982), 70 Ohio St.2d 182, 24 O.O.3d 284, 436 N.E.2d 523, and *State v. Cooey* (1989), 46 Ohio St.3d 20, 544 N.E.2d 895, the trial court held that Ohio law did not permit the "diminished capacity" defense and that under Ohio law, a defendant may not offer psychiatric testimony unrelated to the insanity defense to show that due to mental illness, intoxication or other reason, the defendant lacked the mental capacity to form the *mens rea* element of the crime charged. Appellant did not seek a jury instruction on insanity or call the psychologists to testify.

Appellant and the state stipulated that if the two psychologists were to testify, they would both say that if appellant had ingested forty Fiorinal tablets,[2] she would be voluntarily intoxicated. Upon appellant's request, the court instructed the jury on the voluntary intoxication defense.

Appellant proffered the reports made by both psychologists and proffered the testimony of one of them, Dr. Jackson. Jackson, a forensic psychologist, examined appellant and concluded that appellant suffers from a severe borderline personality disorder which he later called a paranoid delusional disorder. He further concluded that on the date of the offense, appellant was "quite psychotic and unable to distinguish reality from unreality and her actions * * * which lead to these charges against her, * * * were, in fact, based upon this delusional system." He then concluded:

"In my opinion, at the time of the alleged acts, Carrie Wong was unable to consciously volitionally intend her behavior due to the accumulated levels of psychological stress, the paranoid delusional activity and the intoxication by the firional [sic] and it's my opinion that she could not, in fact, in any real sense of the word, know or intend, actions which she was then undertaking."

The jury ultimately returned guilty verdicts on all counts and the trial court sentenced appellant to a total of fifteen to forty years, including twelve years actual on counts one through six, and a three-year gun specification for counts one through six. The court sentenced appellant to one year on each vandalism count to run concurrently with the other sentences and did not sentence appellant on the gun specification to the vandalism charges.

First Assignment of Error:

"The defendant was denied her right to the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution as well as Article I Section 10 of the Ohio Constitution when trial counsel failed to present the testimony of Drs. Jackson and Winter to the jury and request a jury instruction on the defense of not guilty by reason of insanity."

In her reply brief, defendant also asserts:

"The state failed to rebut defendant's argument that she was denied effective assistance of counsel or to address, in the alternative, whether the trial court erroneously excluded expert testimony."

■ In this first assignment of error, appellant claims she was denied effective assistance of counsel because her attorney refused to pursue a defense of not

---

2. Medical records indicate that on October 25, appellant told her treating physicians that she had taken about forty Fiorinal tablets that day before the shooting incident.

guilty by reason of insanity. In the alternative, appellant argues that if counsel was precluded from putting on the psychiatric testimony by the trial court, then that ruling was prejudicial error.[3]

Initially, we note that a close reading of the transcript reveals that the trial court did not issue a ruling that would have prevented counsel from offering the testimony of Drs. Winter and Jackson to prove insanity. Instead, the trial court prevented the doctors from taking the stand to testify as to appellant's ability to form the necessary intent to commit felonious assault, *i.e.*, diminished capacity. Consequently, we reject appellant's argument that the trial court erroneously excluded valid psychiatric testimony relevant to the insanity defense.

■ We now turn to the issue of whether trial counsel's failure to put on an insanity defense constituted ineffective assistance of counsel. R.C. 2901.01(N) provides:

"A person is 'not guilty by reason of insanity' relative to a charge of an offense only if he proves * * * that at the time of the commission of the offense he did not know, as a result of a severe mental disease or defect, the wrongfulness of his acts."

The defense of not guilty by reason of insanity thus requires the defendant to establish that not only did he or she not appreciate the wrongfulness of the acts committed, but also that the defendant suffered from a severe mental disease or defect.

The proffered testimony of Dr. Jackson stated that he believed that appellant suffered from a borderline personality disorder, and at the time of the incident she was suffering from a paranoid delusional disorder that prevented her from appreciating the wrongfulness of her conduct within the meaning of R.C. 2901.01(N). However, he did not believe the paranoid delusional disorder constituted a "severe mental disease or defect" under the law. Dr. Winter, on the other hand, would have testified that appellant did have a severe mental disease or defect within the meaning of the statute. She believed that on the day of the incident, though, appellant acted with purpose and knew right from wrong. As a result, while Drs. Jackson and Winter both agreed that appellant satisfied one prong of the insanity test, neither could or would testify that she was insane at the time of the incident.

Despite this, appellant contends that trial counsel should have put both witnesses on the stand, and then asked the jury to believe the appropriate portion

---

3. While a reply brief normally is restricted to addressing the contentions put forth by the appellee's brief and is not available to raise a new assignment of error, in the interests of justice, we will address this issue.

of each doctor's testimony and find appellant not guilty by reason of insanity. Appellant argues a failure to do so constituted ineffective assistance of counsel.

The Supreme Court of Ohio dealt with the issue of ineffective assistance of counsel in *State v. Smith* (1985), 17 Ohio St.3d 98, 17 OBR 219, 477 N.E.2d 1128. In *Smith,* the court held:

" * * * In *Strickland v. Washington* (1984), [466] U.S. [668, 104 S.Ct. 2052], 80 L.Ed.2d 674, the United States Supreme Court adopted a two-pronged analysis for determining whether counsel's assistance was so defective as to require reversal of a conviction:

" 'First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show the deficient performance prejudiced the defense. This requires showing the counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' * * *

"The court also noted that counsel is 'strongly presumed' to have rendered adequate assistance, and 'the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Smith,* 17 Ohio St.3d at 100, 17 OBR at 220, 477 N.E.2d at 1131. See, also, *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of the syllabus; *State v. Brown* (1988), 38 Ohio St.3d 305, 528 N.E.2d 523.

In order to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Bradley, supra,* at paragraph three of the syllabus.

We do not agree that counsel's conduct was so deficient as to deprive appellant of a fair trial. Appellant argues that because the fact finder is entitled to believe all, part, or none of an expert's testimony, see 1 Ohio Jury Instructions (1993), Section 5.30(4), that defense counsel was deficient in not putting on two experts, from which their combined testimony would satisfy Ohio's definition of insanity. Assuming without deciding that both Dr. Winter's and Dr. Jackson's proffered testimony was admissible on the issue of insanity, we are convinced that counsel's actions can quite easily be considered sound trial strategy. Neither doctor would testify that appellant was insane according to Ohio law. On cross-examination, the prosecuting attorney could simply have asked each doctor whether appellant was insane as defined by Ohio law, and each doctor would have replied in the negative. The prosecuting attorney could then easily have emphasized during his closing argument that even appellant's *own witnesses* did not believe she was insane. Trial counsel could have easily concluded that such a scenario would

have weakened both his own credibility and the credibility of his client, and thus lessened his ability to effectively argue on other issues. Based on these facts alone, trial counsel could reasonably have concluded that his effort would be better spent on arguments other than an insanity defense.

Further, trial counsel's actions are justifiable considering the potential evidentiary ramifications of allowing the doctors to testify. At trial, the prosecution attempted to admit into evidence a letter allegedly written by appellant shortly before the shooting occurred. Although the contents of the letter are not in the record, it is obvious from the transcript that all parties considered the contents of the note to be highly damaging to appellant. Appellant's trial counsel successfully kept the note from being admitted into evidence on the grounds that the state had not laid a sufficient foundation that the letter was actually written by defendant. However, both doctors relied on the note in reaching their respective opinions regarding appellant's psychological condition on the day of the crime. Thus, if defense counsel would have put the doctors on the stand, he would have, in essence, admitted that appellant wrote the note that he wanted excluded and opened the door for cross-examination on the contents of the letter, or possibly its admission. As a result, we find that trial counsel did not fall below the appropriate standard of conduct in his representation of appellant.

Appellant's reliance on *State v. Brown* (1992), 84 Ohio App.3d 414, 616 N.E.2d 1179, is misplaced. In *Brown*, the issue was whether trial counsel's failure to request a competency hearing prior to trial constituted ineffective assistance of counsel. The court held that "[u]nder the facts and circumstances of this case, it was incumbent upon appellant's counsel to, at the very least, raise the issue of appellant's competency to stand trial." *Id.* at 421, 616 N.E.2d at 1183. In the case *sub judice,* defendant was afforded a competency hearing, and the transcript reveals that counsel carefully considered the merits of raising the insanity defense. As a result, we do not think *Brown* applies to the case at bar.

Appellant also contends that the failure to request a jury instruction on insanity was ineffective assistance of counsel. However, appellant's brief makes this argument solely on the basis that the expert testimony should have been presented to the jury. As stated above, there was no prejudicial error in regard to the use of expert testimony by either defense counsel or the court. Since appellant has not raised the issue of whether she was entitled to a jury instruction on insanity based upon lay testimony, we do not address that question. We thus overrule appellant's assignment of error regarding ineffective assistance of counsel.

Second Assignment of Error

"The trial court erred to the prejudice of the defendant by refusing to instruct the jury on the lesser included offenses of aggravated assault and assault on

count six (the felonious assault charge against Dr. Henry Wong) and by refusing to charge assault and negligent assault as lesser included offenses with regard to counts one through five."

In her second assignment of error, appellant contends that the trial court erred by refusing to instruct the jury on the lesser included offenses of aggravated assault and assault on count six (assault of Dr. Wong) and assault on counts one through five (assaults of the police officers). Appellant also contends the trial court committed plain error in failing to instruct the jury on the lesser included offense of negligent assault regarding counts one through six.

■■■ Under R.C. 2945.74 and Crim.R. 31(C), there are three groups of lesser offenses on which the jury must be instructed when supported by the evidence at trial: (1) attempts to commit the crime charged, if such an attempt is an offense at law; (2) inferior degrees of the indicted offense; or (3) lesser included offenses. *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph one of the syllabus. An instruction to the jury on a lesser offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser offense. *State v. Thomas* (1988), 40 Ohio St.3d 213, 533 N.E.2d 286, paragraph two of the syllabus, clarifying *State v. Kidder* (1987), 32 Ohio St.3d 279, 513 N.E.2d 311; *State v. Davis* (1983), 6 Ohio St.3d 91, 6 OBR 131, 451 N.E.2d 772; *State v. Wilkins* (1980), 64 Ohio St.2d 382, 18 O.O.3d 528, 415 N.E.2d 303. An offense is an "inferior degree" of the charged offense where its elements are identical to or contained within the charged offense, except for one or more additional mitigating elements. *Deem, supra*, paragraph two of the syllabus. An offense may be a lesser included offense of another if (1) the offense carries a lesser penalty than the other; (2) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense also being committed; and (3) some element of the greater offense is not required to prove the commission of the lesser offense. *Id.* at paragraph three of the syllabus.

■■ We will first address appellant's contention that the trial court erroneously refused to instruct the jury on the elements of aggravated assault of Dr. Wong.[4] Appellant was charged with felonious assault of Dr. Wong under R.C. 2903.11(A)(2). R.C. 2903.11 states:

"(A) No person shall knowingly:

"(1) Cause serious physical harm to another;

---

4. At trial, appellant's counsel argued that the court should instruct the jury on aggravated assault for counts one through five also, contending that appellant was provoked by the guns drawn by police surrounding the house. Appellant abandoned this contention on appeal.

"(2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.

"(B) Whoever violates this section is guilty of felonious assault, an aggravated felony of the second degree. If the victim of the offense is a peace officer, as defined in section 2935.01 of the Revised Code, felonious assault is an aggravated felony of the first degree."

"Aggravated assault" is defined in R.C. 2903.12:

"(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly:

"(1) Cause serious physical harm to another;

"(2) Cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code.

"(B) Whoever violates this section is guilty of aggravated assault, a felony of the fourth degree. If the victim of the offense is a peace officer, as defined in section 2935.01 of the Revised Code, aggravated assault is a felony of the third degree."

The elements of aggravated assault are identical to felonious assault except for the additional mitigating element of serious provocation. Therefore, aggravated assault is an offense of inferior degree of felonious assault. When a defendant who is charged with felonious assault presents sufficient evidence of serious provocation, the court must instruct the jury on aggravated assault. *Deem,* *supra,* paragraph four of the syllabus.

Appellant contends that looking subjectively at appellant, the record contains sufficient evidence of serious provocation by Dr. Wong. Appellant argues that Dr. Wong was unsympathetic following appellant's miscarriage and blamed appellant for the miscarriage; that Dr. Wong argued with appellant the evening before the incident; that Dr. Wong did not pay the phone or electric bills, causing service to be interrupted. Appellant concedes that these events would be minor, insignificant provocation to a mentally healthy person, but argues they were major threats and insults to appellant.

We note that the court in *Deem, supra,* paragraph five of the syllabus, held that, in considering provocation, the trial court must consider the emotional and mental state of the defendant and the conditions and circumstances surrounding the defendant. The Ohio Supreme Court clarified this holding in *State v. Shane* (1992), 63 Ohio St.3d 630, 590 N.E.2d 272. See, also, *State v. Waugh* (Mar. 2, 1994), Highland App. No. 92CA815, unreported, at 8–9, 1994 WL 71228.

In *Shane,* the court set out a two-step analysis. First, "[i]n determining whether the provocation is *reasonably sufficient* to bring on sudden passion or a sudden fit of rage, an *objective standard* must be applied." (Emphasis added.) *Shane,* 63 Ohio St.3d at 634, 590 N.E.2d at 276. For provocation to be "reasonably sufficient" to bring on sudden passion or a sudden fit of rage, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control. *Id.* at 635, 590 N.E.2d at 276.

If the first, objective, prong of the test is met, the inquiry shifts to the subjective question: was this defendant actually under the influence of sudden passion or sudden fit of rage. *Id.* at 634, 590 N.E.2d at 276. Only at this point must the court consider "the emotional and mental state of the defendant and the conditions and circumstances that surrounded" the defendant at that time. *Id.,* citing *Deem,* paragraph five of the syllabus.

Applying this two-step analysis, we hold that the record does not contain evidence of reasonably sufficient provocation which would arouse the passions of an ordinary person beyond his or her control. Thus, while the evidence may support appellant's contention that she was actually provoked by Dr. Wong, appellant cannot satisfy the first step of the analysis, the objective standard. Accordingly, the trial court properly refused to instruct the jury on the lesser included offense of aggravated assault of Dr. Wong.

■■■■ Appellant also contends that the trial court should have instructed the jury on the elements of assault as a lesser included offense of all six felonious assault charges. R.C. 2903.13 defines "assault":

"(A) No person shall knowingly cause or attempt to cause physical harm to another.

"(B) No person shall recklessly cause serious physical harm to another.

"(C) Whoever violates this section is guilty of assault, a misdemeanor of the first degree. * * *"

Appellant argues that because the only issue tried to the jury was appellant's *mens rea,* the court should have instructed the jury on assault, which only includes the lesser *mens rea,* "recklessly." Thus, appellant appears to argue only that the court should have instructed on subsection (B) of R.C. 2903.13.

We first must determine whether reckless assault under R.C. 2903.13(B) constitutes a lesser included offense of the crime charged. Counts one through six allege that appellant "did knowingly cause or attempt to cause physical harm * * * by means of a deadly weapon," *i.e.,* appellant was charged under R.C. 2903.11(A)(2). As noted above, an offense may be a lesser included offense of another if (1) the offense carries a lesser penalty than the other; (2) the greater

offense cannot, as statutorily defined, ever be committed without the lesser offense being committed; and (3) some element of the greater offense is not required to prove the commission of the lesser offense. *Deem,* paragraph three of the syllabus.

Reckless assault, R.C. 2903.13(B), does carry a lesser penalty than felonious assault, R.C. 2903.11(A)(2), satisfying the first prong of the test. Further, the third prong is satisfied because felonious assault requires proof that the defendant acted "knowingly" and that the defendant acted "by means of a deadly weapon or dangerous ordnance," neither of which is required to prove reckless assault.

However, the second prong of the test cannot be met. As statutorily defined in R.C. 2903.11(A)(2), the greater offense, felonious assault, can be committed without the lesser offense, reckless assault, R.C. 2903.13(B), being committed because reckless assault requires proof that the defendant caused serious physical harm. Felonious assault requires only proof that the defendant "cause or attempt to cause physical harm." Thus, a defendant could be convicted of felonious assault without proof of· actual causation of *serious* physical harm. Accordingly, reckless assault defined in R.C. 2903.13(B) cannot be a lesser included offense of felonious assault defined in R.C. 2903.11(A)(2).[5] *State v. Colston* (Dec. 17, 1993), Montgomery App. No. 13599, unreported, at 25, 1993 WL 544939. Therefore, the trial court did not err in refusing to instruct the jury on the elements of reckless assault for counts one through six.

 Appellant also claims under this assignment of error that the trial court erred in failing to instruct the jury on negligent assault as a lesser included offense of felonious assault charged in counts one through six. "Negligent assault" is defined by R.C. 2903.14:

"(A) No person shall negligently, by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code, cause physical harm to another.

"(B) Whoever violates this section is guilty of negligent assault, a misdemeanor of the third degree."

Appellant did not request a jury instruction on negligent assault or object to the trial court's failure to give such an instruction. Crim.R. 30. Accordingly, we

---

5. We note that assault as defined by R.C. 2903.13(A) is a lesser included offense of felonious assault as defined by R.C. 2903.11(A)(1). See *State v. Thrasher* (Jan. 21, 1994), Clark App. Nos. 2996 and 2997, unreported, 1994 WL 12425. Likewise, reckless assault under R.C. 2903.13(B) does constitute a lesser included offense of felonious assault under R.C. 2903.11(A)(1). *Colston, supra; State v. Davis* (June 21, 1989), Hamilton App. No. C–880283, unreported, 1989 WL 65744.

will not reverse unless the failure to give the instruction amounted to plain error. Notice of plain error is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Long* (1978), 53 Ohio St.2d 91, 94, 7 O.O.3d 178, 179, 372 N.E.2d 804, 806; *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 227, 4 OBR 580, 581, 448 N.E.2d 452, 453. Plain error does not exist unless but for the error, the outcome of the trial clearly would have been otherwise. *State v. Nicholas* (1993), 66 Ohio St.3d 431, 436, 613 N.E.2d 225, 229.

 First, we conclude that negligent assault is a lesser included offense of felonious assault because all three prongs of the test are satisfied. *State v. McCornell* (1993), 91 Ohio App.3d 141, 631 N.E.2d 1110. Negligent assault carries a lesser penalty than felonious assault, satisfying the first prong of the test. The only statutory difference between felonious assault and negligent assault is the *mens rea* necessary to be convicted of the crime. Thus, the second and third prongs of the test are established because the greater offense of felonious assault cannot be committed without the lesser offense of negligent assault also being committed and one element of felonious assault, the "knowingly" element, is not required to prove the lesser offense.

Second, we must determine whether the evidence presented at trial would reasonably support *both* an acquittal of felonious assault and a conviction of negligent assault. *Thomas, supra,* paragraph two of the syllabus. To establish felonious assault, the state must prove that the defendant acted knowingly:

"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

To be convicted of negligent assault, the state need only prove that the defendant acted negligently:

"A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist." R.C. 2901.22(D).

Thus, we must determine whether a reasonable jury could have found that the state did not prove that appellant acted knowingly but did prove that she acted negligently. We conclude that it was not plain error to fail to instruct the jury on negligent assault.

The record does contain evidence upon which a reasonable jury could decide that appellant acted knowingly, *i.e.,* that she was aware that her conduct would

probably cause a certain result or will probably be of a certain nature. Appellant's husband, Dr. Wong, testified that appellant had used the shotgun before. Appellant's daughter Patty testified that appellant told her to leave the house "before they shoot you too," indicating that appellant understood that there were people outside the house. Several witnesses testified about statements appellant made after the incident. Urias Hall, Chief Deputy of the Jackson County Sheriff's Department, testified that following the incident, when appellant was taken to Oak Hill Hospital, appellant called him into the room. After Deputy Hall read appellant her constitutional rights, appellant told him, "I meant to do it." A security guard at Oak Hill Hospital testified that on October 25 when appellant was being treated, appellant told Dr. Wong that she would do to him what she did to the police officer. Further, the record reveals that appellant fired eight shots. Five of the first six shots went through the door following words or actions by people on the other side of the door. The first shot came through the door immediately after Officer Snyder knocked on the door and identified himself as a police officer. The third shot came through the door as Dr. Wong ran to the door calling out to appellant. The fourth and fifth shots occurred after Officer Conger knocked on the door. The sixth shot, which injured Officers Snyder and Walls, came through the door as Sgt. Mannering stood by the door talking to appellant.

A person has knowledge of circumstances when she is aware that such circumstances probably exist. R.C. 2901.22(B). A reasonable jury could find that appellant was aware that people were standing on the other side of the door she shot into and that appellant was aware that shooting through the door could injure one of those people. Because the record contains evidence upon which a reasonable jury could convict appellant of felonious assault, *Thomas, supra*, we find no plain error in failing to instruct on negligent assault.

For all of the above reasons, we overrule appellant's second assignment of error. We note that in her First Assignment of Error, appellant also alleges that the failure to request an instruction on negligent assault constitutes ineffective assistance of trial counsel. Because we conclude that a reasonable jury could find that appellant acted knowingly, we cannot say that but for counsel's failure to request a negligent assault instruction, the results of the trial clearly would have been otherwise. *Bradley, supra*.

Third Assignment of Error

"The trial court committed plain error when it charged the jury on two (2) counts of felony vandalism and (A) failed to identify or relate either count to any evidence adduced at trial, and (B) charged the jury on a firearm specification related to each vandalism count."

In her Third Assignment of Error, appellant contends that the trial court committed plain error by charging the jury on the two counts of vandalism and (1) failing to identify or relate either count to the evidence adduced at trial, and (2) charging the jury on a firearm specification to each vandalism count.

Appellant did not object to the court's jury instructions relating to the vandalism counts. As noted above, we may not reverse unless, but for the defective instruction, the outcome of the trial clearly would have been otherwise. *Nicholas, supra.*

 Appellant first contends that the trial court committed plain error by failing to relate the vandalism charges to evidence in the record. In her reply brief, appellant argues that the indictment itself was defective because it did not identify the property appellant allegedly damaged. We first note that appellant did not challenge the indictment by pretrial motion as required by Crim.R. 12(B)(2).

Appellant cites no authority for imposing a duty upon the trial court to specifically relate the jury instructions to evidence in the record. Even if such a duty did exist, however, we could not find that but for the error, the result of the trial clearly would have been otherwise. Several officers testified about damage to a Jackson County Sheriff's Department cruiser and to a cruiser owned by the Oak Hill Police Department. Jackson County Sheriff's Deputy Tony Robinson testified that he counted one hundred two pellet indentations on the Oak Hill cruiser and thirty-five pellet indentations on the Jackson County cruiser. Further, appellant agreed to stipulate that the cost of repairing the 1986 Chevrolet cruiser owned by the village of Oak Hill was $621.70 and the cost of repairing the 1989 Ford LTD Crown Victoria owned by the Jackson County Sheriff's Department was $702.11. Accordingly, we cannot say that the result of the trial clearly would have been otherwise had the trial court somehow related the vandalism counts to the evidence.

 Appellant's second contention under this assignment of error is likewise without merit. Pursuant to R.C. 2929.71(A), a defendant may not be sentenced on a firearm specification if the defendant is sentenced to a definite term on the underlying felony. See, also, *State v. Walton* (1990), 66 Ohio App.3d 243, 247, 583 N.E.2d 1106, 1108; *State v. Ellington* (1989), 65 Ohio App.3d 473, 475, 584 N.E.2d 784, 786. Appellant argues the court committed plain error by instructing the jury on the specifications because if the jury hadn't been instructed on the firearm specifications, they would not have found appellant guilty of those specifications; therefore, the result of the trial clearly would have been otherwise. The indictment in this case charged appellant with vandalism, R.C. 2909.05, a felony of the fourth degree if the amount of physical harm is less than $5,000.

Because the indictment did not include specifications to support an indefinite sentence as required by R.C. 2941.143, appellant could only be sentenced to a definite term of imprisonment if convicted of vandalism. R.C. 2929.11(D); R.C. 2929.11(G). Thus, the law is clear that appellant could not be sentenced to an additional three-year term of actual incarceration on the vandalism charges, counts seven and eight of the indictment.

The trial court, however, specifically found that appellant could not be sentenced on the firearm specification and thus sentenced her to only one year on the vandalism charges of counts seven and eight. Accordingly, the court did not err in imposing sentence upon appellant. Appellant does not indicate how, if at all, she was prejudiced by this instruction. Because appellant cannot demonstrate prejudice from the court's instructions, we find no plain error and overrule appellant's Third Assignment of Error.

Fourth Assignment of Error

"The trial court erred to the prejudice of the defendant by refusing to allow expert testimony that the defendant's underlying psychological condition in combination with several other stressors diminished her capacity to form the requisite mental state necessary for conviction of the crime of felonious assault, *State v. Wilcox* (1982), 70 Ohio St.2d 182 [24 O.O.3d 284, 436 N.E.2d 523], to the contrary notwithstanding."

Defendant also asserts in her supplemental brief the following related assignment of error:

"The *Wilcox* rule is unconstitutional as applied or, at a minimum, is inapplicable to this case."

We will consider both of these assignments of error together.

At trial, the defendant did not offer evidence to support a plea of not guilty by reason of insanity, nor did she seek an instruction to the jury on the insanity defense. Instead, counsel attempted to offer expert psychiatric testimony to show that the appellant's mental illness and voluntary intoxication prevented her from forming the requisite intent, *i.e.,* that she did not act knowingly. The trial judge excluded the testimony on the grounds that it constituted an attempt to introduce the defense of "diminished capacity" in direct contradiction to several Supreme Court of Ohio decisions. See *State v. Slagle* (1992), 65 Ohio St.3d 597, 607, 605 N.E.2d 916, 926; *Cooey, supra,* 46 Ohio St.3d at 26, 544 N.E.2d at 906; *Wilcox, supra.*

To fully understand this issue, it is necessary to distinguish between the insanity defense and the doctrine of diminished capacity. As stated previously, the defense of not guilty by reason of insanity requires a defendant to prove that,

as a result of a severe mental disease or defect, he or she did not appreciate the wrongfulness of the acts committed. R.C. 2901.01(N). The insanity defense thus recognizes that some individuals in society suffer from such severe mental disorders that it would be unjust to hold them criminally responsible for their conduct, because they are incapable of knowing right from wrong. *Wilcox, supra,* 70 Ohio St.2d at 192, 24 O.O.3d at 289, 436 N.E.2d at 529.

The doctrine of diminished capacity, however, does not attempt to distinguish the sane (those who know right from wrong) from the insane. Rather, it attempts to ascertain whether a particular person who does not meet the insanity test could have formed the specific intent to commit the crime of which he or she is accused. *Id.* at 192, 24 O.O.3d at 289, 436 N.E.2d at 529. While the insanity defense thus draws a bright line between the criminally responsible and the criminally irresponsible based on their respective abilities to appreciate right from wrong, the diminished capacity doctrine tries to distinguish among sane defendants based on their subjective mental and emotional state. *Id.* at 192–193, 24 O.O.3d at 289–290, 436 N.E.2d at 529–530.

The Supreme Court of Ohio has summarized the difference between the two doctrines as follows:

"It is true, of course, that the existence of the required state of mind is to be determined subjectively in the sense that the issue must be resolved according to the particular circumstance of a given case. However, this fact may not be allowed to obscure the critical difference between the legal concepts of *mens rea* and insanity. * * * The former refers to the existence in fact of a guilty mind; insanity, on the other hand, connotes a presumption that a particular individual lacks the capacity to possess such a state of mind. It is upon this distinction that the 'logic' of the diminished capacity doctrine founders. * * * The line between the sane and the insane for purposes of criminal adjudication is not drawn because for one group the actual existence of the necessary mental state (or lack thereof) can be determined with any greater certainty, but rather because those whom the law declares insane are demonstrably so aberrational in their psychiatric characteristics that we choose to make the assumption that they are incapable of possessing the specified state of mind. Within the range of individuals who are not 'insane,' the law does not recognize the readily demonstrable fact that as between individual criminal defendants the nature and development of their mental capabilities may vary greatly." *Wilcox, supra,* 70 Ohio St.2d at 191–192, 24 O.O.3d at 289, 436 N.E.2d at 528–529, quoting *Bethea v. United States* (D.C.App.1976), 365 A.2d 64.

Appellant concedes that she proffered the testimony of the expert witnesses to show that she did not have the *mens rea* to commit felonious assault, and thus the testimony is barred under the established Ohio law cited *supra.* However,

appellant argues that the law under *Wilcox* should not apply in this situation for several reasons.

Defendant first argues that the expert testimony should have been permitted to show that her criminal actions were a result of serious provocation, thus justifying a charge to the jury on the lesser included offense of aggravated assault. Appellant contends that because serious provocation is an affirmative defense for which the defendant bears the burden of proof, she should have been entitled to put on expert testimony establishing that as a result of her psychological problems and drug intake, she was "reasonably provoked" within the meaning of the statute. In short, appellant wishes us to carve out an exception to the *Wilcox* rule that would allow her to put on expert psychiatric testimony to show that she was *subjectively* provoked into her actions.

While it is true that reasonable provocation is an affirmative defense which the defendant has the burden of establishing at trial, see *State v. Rhodes* (1992), 63 Ohio St.3d 613, 590 N.E.2d 261, appellant's argument must still be rejected. As discussed *supra*, in order to be entitled to a jury instruction on aggravated assault, the defendant must put forth evidence from which it may be found that an *objective* reasonable person could have been provoked. Because the initial standard that must be met is an objective one, appellant's subjective state of mind is irrelevant unless she introduces some evidence to satisfy the objective prong of the test. In other words, psychiatric testimony to show that appellant was subjectively provoked is inappropriate simply because the standard that must first be met is an objective one. Further, the Supreme Court of Ohio has explicitly stated that expert psychiatric testimony, unrelated to the insanity defense, may not be admitted to show that a defendant lacked the capacity to form the specific mental state required for a particular crime *or degree of crime*. *Wilcox, supra*, paragraph two of the syllabus; *Cooey, supra*, paragraph one of the syllabus. As a result, we do not find this argument to be a persuasive reason to fail to apply the rule promulgated in *Wilcox*.

Appellant next contends that the rule pronounced in *Wilcox* is unconstitutional because it violates the right to due process and compulsory process under the United States and Ohio Constitutions. This argument is also without merit.

Generally, a defendant's right to present evidence is not violated unless the court recognizes the testimony of a particular type of witness as competent and relevant, but then arbitrarily prevents the use of such testimony by the criminal defendant. *Washington v. Texas* (1967), 388 U.S. 14, 25, 87 S.Ct. 1920, 1926, 18 L.Ed.2d 1019, 1026 (Harlan, J., concurring). At first, there was some confusion as to whether the above rule permitted states to allow psychiatric testimony for the insanity defense, but then refuse to admit such testimony on

the issue of *mens rea*. This confusion initially caused the Seventh Circuit to hold that because Wisconsin recognized the validity of psychiatric testimony in general, it could not exclude psychiatrists from testifying on the issue of whether a criminal defendant had the capacity to form the necessary intent to be convicted of a crime. See *Hughes v. Mathews* (C.A.7, 1978), 576 F.2d 1250, certiorari denied (1978), 439 U.S. 801, 99 S.Ct. 43, 58 L.Ed.2d 94.

However, the Seventh Circuit, as well as all the other federal courts that have faced this precise issue, now unanimously hold that the exclusion of psychiatric testimony on the issue of *mens rea* or specific intent does not violate a criminal defendant's constitutional rights to due process or compulsory process. See *Haas v. Abrahamson* (C.A.7, 1990), 910 F.2d 384, 398; *United States v. Kepreos* (C.A.1, 1985), 759 F.2d 961, 964; *Campbell v. Wainwright* (C.A.11, 1984), 738 F.2d 1573, 1581–1582; *Muench v. Israel* (C.A.7, 1983), 715 F.2d 1124, 1144–1145; *Wahrlich v. Arizona* (C.A.9, 1973), 479 F.2d 1137. The reasons for the above results are twofold. First, it is generally recognized that a state may validly find psychiatric testimony to be a useful tool in the determination of insanity, yet not be convinced that the sciences of psychiatry and psychology are advanced enough to "fine-tune" among sane defendants and find whether they possessed the specific intent necessary for commission of a crime. Second, while the Supreme Court of the United States has not dealt with this issue at length, there is binding precedent to support the conclusion that the Supreme Court has considered this issue, and found no valid constitutional claim. See *Fisher v. United States* (1946), 328 U.S. 463, 66 S.Ct. 1318, 90 L.Ed. 1382; *Coleman v. California* (1942), 317 U.S. 596, 63 S.Ct. 162, 87 L.Ed. 487; *Troche v. California* (1929), 280 U.S. 524, 50 S.Ct. 87, 74 L.Ed. 592; see, also, *Campbell, supra*, 738 F.2d at 1582; *Muench, supra*, 715 F.2d at 1137–1144 (recognizing that the above Supreme Court cases are binding precedent). It is thus apparent that appellant's claim has been rejected by all the courts that have faced the issue, including the Supreme Court.

For the above reasons, we overrule appellant's assignment of error claiming that the *Wilcox* rule is unconstitutional.

Finally, appellant points out that at the time *Wilcox* was decided, Ohio's insanity test was broader than it is presently, allowing a defendant to show insanity by proving either that he or she did not know right from wrong, *or* by showing that he or she suffered from an irresistible impulse. Appellant then notes that the *Wilcox* decision rejected the diminished capacity doctrine *in part* because of the notion that the then-existing insanity rule was broad enough to allow defendants "to present a meaningful insanity defense." *Id.*, 70 Ohio St.2d at 188, 24 O.O.3d at 288, 436 N.E.2d at 527. Appellant argues that because the legislature has recently amended the definition of insanity to narrow the doctrine to the traditional "right from wrong" test, the rejection of the diminished capacity

doctrine should be reconsidered, given that part of the reasoning supporting the *Wilcox* decision is no longer applicable.

However, the fact that Ohio provided a liberal insanity defense was only a minor part of the court's reasoning in *Wilcox*. As the Ohio Supreme Court later stated, the *Wilcox* rule is primarily "based on a mistrust of the ability of psychiatry to accurately fine-tune degrees of capacity among offenders who are sane—*i.e.*, who have the minimal capacity to act voluntarily." *Cooey, supra,* 46 Ohio St.3d at 26, 544 N.E.2d at 906. Consequently, we do not think the legislature's amendment of the definition of the insanity defense supplies us with ample reason to reach a decision which would contradict an explicit pronouncement of the Ohio Supreme Court. Thus, we reject appellant's plea to ignore *State v. Wilcox,* and we uphold the trial court's exclusion of the expert testimony.

Fifth Assignment of Error

"The defendant's conviction and sentence violate her right not to be subject to cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution as well as Article I Section 9 of the Ohio Constitution where the uncontradicted evidence is that the offense [*sic* ] behavior is the direct and proximate result of her mental disease or defect as opposed to her free will, O.R.C. Sections 2901.01(N) and 2945.391 to the contrary notwithstanding."

This argument must also be rejected.

In essence, appellant has challenged the constitutionality of Ohio's sentencing scheme which allows a defendant such as appellant, who does not fit into the insanity defense but who may have, at the commission of the offense, suffered from some psychological breakdown, to be sentenced to substantial jail time. However, appellant failed to raise this claim to the trial court and, therefore, has waived the right to challenge the constitutionality of Ohio's statutory sentencing scheme. See *State v. Rojas* (1992), 64 Ohio St.3d 131, 138, 592 N.E.2d 1376, 1383; *State v. Awan* (1986), 22 Ohio St.3d 120, 22 OBR 199, 489 N.E.2d 277.

Even if appellant had not waived this issue, her claim is without merit. Despite appellant's assertion that the uncontradicted evidence established that her actions were a result of her mental disease or defect, in fact, exactly the opposite is true. Neither doctor found that defendant was insane under Ohio law, nor did any doctor find that defendant was deprived of her free will.

Further, it is well established that the imposition of criminal punishment on those who may suffer from some diminished capacity, but who are not insane, does not violate either the Ohio or federal Constitution. See *Penry v. Lynaugh*

(1989), 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (upholding death penalty for a mentally retarded, but not insane, defendant, as long as mitigating circumstances considered); *Rojas, supra,* 64 Ohio St.3d at 137–138, 592 N.E.2d at 1382–1384. Thus, appellant's claim that her sentence was cruel and unusual is without merit. Appellant's fifth assignment of error is also overruled.

Having reviewed all of appellant's assignments of error and found them to be without merit, we affirm the judgment of the trial court.

*Judgment affirmed.*

PETER B. ABELE, J., concurs.

GREY, J., concurs in judgment only.