OPINION
{¶ 1} Defendant-appellant, Keyawn Jackson, appeals his convictions in the Butler County Court of Common Pleas for reckless homicide, involuntary manslaughter, felonious assault, illegal possession of a firearm in a liquor premises, and having a firearm under a disability. We affirm the decision of the trial court.
 {¶ 2} On the evening of February 15, 2001, appellant was at the American Legion in the city of Hamilton, in Butler County. Appellant was involved in an altercation with Quantarious Morris ("Quan"), Chico Morris ("Chico"), and James Collins ("James"). The accounts of what transpired that night differ. Appellant testified that Quan, Chico, and James displayed weapons and threatened to kill him at the American Legion. James testified that it was appellant who threatened them and lifted his shirt to display a weapon. James testified that neither he, Chico, nor Quan had any weapons that night.
 {¶ 3} Appellant left the American Legion and walked one block to the Park Lounge. Appellant stated that Quan, Chico, and James followed him to the Park Lounge and again displayed weapons and threatened to kill him. Appellant testified he was frightened so he left the Park Lounge and walked to Mahogany's Bar.
 {¶ 4} Appellant walked to Mahogany's Bar looking for someone to give him a ride because he was afraid to walk home alone since Chico, Quan, and James knew where he lived. Appellant's residence is six blocks from the Park Lounge. Mahogany's Bar is ten blocks from the Park Lounge. According to appellant, he was walking across the dance floor at Mahogany's Bar when Quan, Chico, and James surrounded him. Appellant claimed he was struck on the left side of the face with an object he thought was a pistol. Chico testified that he was the only person to approach appellant. As Chico came near appellant, appellant threw the first punch. Chico and appellant began fighting on the floor of the bar. While appellant was on the floor Quan, James, Chico, and possibly others beat and kicked him.
 {¶ 5} The bouncer of Mahogany's Bar, Charles Von Miller, came to appellant's aid. Miller testified that when he pulled Chico off appellant, appellant had a pistol pointed at Chico. A single gunshot was fired. A bullet entered and exited Chico's upper thigh. Miller then heard a "thump" behind him. The thump was Damon Collier falling onto one of the booths behind Chico. Collier had a gunshot wound to his head. Miller physically threw Chico out of the establishment. Then Miller physically threw appellant out of the establishment. Miller stated appellant was still holding what appeared to be "a .380 caliber" pistol in his hand when he left the premises.
 {¶ 6} At approximately 1:30 a.m., on February 16, 2001, police officers were dispatched to Mahogany's Bar. Lieutenant James Gross found Collier lying on his left side on the floor of Mahogany's Bar. Collier was choking on blood and brain matter that had accumulated in his mouth. Collier was transported to the hospital where he died as a result of the gunshot wound to his head. A copper-jacketed .380 caliber round was found lodged between Collier's brain and skull.
 {¶ 7} Appellant turned himself into the police on February 19, 2001. Appellant was tried before a jury and convicted of reckless homicide, involuntary manslaughter, felonious assault, illegal possession of a firearm in a liquor premises, and having a firearm under a disability. This appeal follows in which appellant raises four assignments of error:
 {¶ 8} Assignment of Error No. 1:
 {¶ 9} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT IN ITS INSTRUCTION TO THE JURY AS TO THE LIMITED RIGHT OF A PERSON UNDER DISABILITY TO USE A FIREARM FOR SELF DEFENSE, BY ITS USE OF THE WORDS `IMMEDIATELY BEFORE THE INCIDENT.'"
 {¶ 10} The instructions the trial court gave to the jury on self-defense were as follows: "[a]ll individuals, including those under disability prohibiting carrying of weapons, have a right to defend themselves against immediate threat of deadly force provided, however, they did not knowingly acquire, have or carry or use a firearmimmediately before the incident in which the firearm was possessed, carried or used." (Emphasis added.) Appellant argues the trial court abused its discretion when it instructed the jury without further defining the word "immediately." Appellant argues the use of the words, "immediately before the incident" prejudiced him because the words misled the jury.
 {¶ 11} The giving of jury instructions is within the sound discretion of the trial court and will not be disturbed upon appeal unless an abuse of discretion is shown. State v. Martens (1993),90 Ohio App.3d 338, 343; State v. Guster (1981), 66 Ohio St.2d 266, 272. An abuse of discretion connotes that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Adams (1980),62 Ohio St.2d 151, 157.
 {¶ 12} R.C. 2923.13 defines having weapons under disability as follows:
 {¶ 13} "(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
 {¶ 14} "* * *
 {¶ 15} "(2) Such person is under indictment for or has been convicted of any felony of violence * * *. (3) The person is under indictment for or has been convicted of any offense involving the illegal possession, use sale, administration, distribution, or trafficking in any drug of abuse * * *.
 {¶ 16} "(B) Whoever violates this section is guilty of having weapons while under disability, a felony of the fourth degree."
 {¶ 17} In the case at bar, appellant admitted to prior convictions for several felonies, including drug offenses, therefore, he would be considered under a disability pursuant to R.C. 2923.13.
 {¶ 18} Appellant argues his situation is identical to that of the defendant in State v. Hardy (1978), 60 Ohio App.2d 325, in that he did not have possession of the gun at any time prior to the altercation. The defendant in Hardy gained possession of and used a weapon only for the brief period necessary to deflect an immediate, overt physical threat from another person with a deadly weapon. Id. at 328-330. The Hardy
court held that "the prohibitions of R.C. 2923.13 do not restrict the right of an individual under a disability from acting in self-defense, when he or she did not knowingly acquire, have, carry or use a firearmpreviously." Id. at 330. (Emphasis added.) The trial court rejected the word "previously," used by the court in Hardy, as misleading to the jury. Appellant argues the use of "immediately" without defining the meaning is even more misleading.
 {¶ 19} Appellant testified that he fortuitously found a loaded pistol on the floor of the bar and that he only acquired the pistol to defend himself against Chico, Quan and James. Appellant testified that he fired the pistol into the air to scare off his attackers, and then dropped the pistol. However, James testified that appellant "lift up his shirt [sic] a little bit and somethin' shiny — * * * I can't say it was a knife or a gun but it was somethin' [sic]." James was asked on direct examination if he saw appellant remove a firearm from his clothing during the fight. James was asked, "[a]nd he pulled [the pistol] from where?" James answered, "[f]rom here, right side of his pants." Chico testified that appellant "pulled the gun out, he had the gun like goin', like I said, toward my chest." Miller testified that he did not see a firearm on the floor before or during the fight. Furthermore, Miller testified that appellant retained possession of the pistol and still had it in his hand when he was thrown out of the bar. The pistol was not found inside or outside Mahogany's Bar after appellant was ejected.
 {¶ 20} The jury was free to believe all, none, or only part of the testimony of any of the witnesses, including appellant. See State v.Sims (Feb. 20, 1997), Franklin App. No. 96 APA05-676. Thus, based on the evidence presented, a reasonable jury could have convicted appellant of having a weapon while under a disability. We find nothing in the record indicating that the court abused its discretion by giving the instruction to the jury with the words "immediately before the incident." There was no prejudice to appellant. Therefore, the first assignment of error is overruled.
 {¶ 21} Assignment of Error No. 2:
 {¶ 22} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT IN FAILING TO INSTRUCT THE JURY ON NEGLIGENT ASSAULT AS A LESSER INCLUDED OFFENSE OF FELONIOUS ASSAULT."
 {¶ 23} Appellant argues that the trial court should have instructed the jury on the lesser included offense of negligent assault. Appellant argues when a defendant properly requests a jury instruction on a lesser included offense, the trial court abuses its discretion in failing to instruct on the lesser included offense. Appellant claims that the evidence presented at trial supported an acquittal on felonious assault and a conviction on negligent assault. Appellant asserts that the jury could have reasonably found that he did not intend to shoot Chico, but that he acted negligently in firing the pistol in the air.
 {¶ 24} The mere fact that an offense is a lesser included offense of another does not necessitate a jury charge on the lesser included offense. State v. Thomas (1988), 40 Ohio St.3d 213, 216. A jury instruction on a lesser included offense should only be given when the evidence presented at trial reasonably supports an acquittal on the crime charged and a conviction on a lesser included offense of the crime charged. Id.
 {¶ 25} Negligent assault is a lesser included offense of felonious assault. State v. Wong (1994), 95 Ohio App.3d 39, 54. The only statutory difference between felonious assault and negligent assault "is the mens rea necessary to be convicted of the crime." Id. Felonious assault requires a showing that the defendant acted knowingly, whereas negligent assault requires a showing that the defendant acted negligently. Id.
 {¶ 26} R.C. 2901.22 defines the different culpable mental states. It states:
 {¶ 27} "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
 {¶ 28} "* * *
 {¶ 29} "(D) A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist." R.C. 2901.22(B) and (D).
 {¶ 30} Thus, in order for the court to have instructed the jury on negligent assault, the evidence must have supported the theory that appellant acted negligently while not upholding the theory that he acted knowingly when he shot the pistol and the bullet struck Chico.
 {¶ 31} The evidence at trial revealed the following pertinent testimony. Appellant got into an altercation with Chico, Quan, and James at Mahogany's Bar, an establishment serving liquor. James testified that appellant lifted his shirt to display a weapon. James then testified that appellant removed a pistol from "the right side of his pants." Chico testified that during the fight, appellant pointed the gun "towards my chest, * * * and then the gun got moved down toward my stomach." Miller, the bouncer at Mahogany's Bar, also saw appellant point the gun at Chico. Furthermore, Miller testified that he "saw [the gunshot] and heard it * * * [f]rom the gun in [appellant's] hand." Appellant denies carrying a weapon into Mahogany's Bar, but admitted he fired a pistol there. Appellant stated, "I grabbed [the gun] and I shot it up in the air, tryin' to scare those guys up off of me." Appellant was asked on cross-examination, "did you have to take a safety off, did you have to cock it, I mean, what'd you have to do to fire it?" Appellant replied, "[j]ust pulled the trigger." When appellant was asked, "you fired one shot," he answered, "[y]es." These actions demonstrate that appellant acted purposefully in the shooting.
 {¶ 32} The evidence does not indicate that appellant acted negligently. Appellant admits to pulling the trigger on the pistol in order to "scare those guys up off of me." Appellant acted knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. No evidence was presented that demonstrates that appellant failed to perceive or avoid a risk or that he had a substantial lapse of due care. Appellant acted knowingly even though he testified he did not aim at Chico, but instead fired the pistol into the air.
 {¶ 33} Appellant's testimony is the only evidence that might lean in favor of a charge on negligent assault. However, "a lesser included offense instruction is not warranted merely upon the presence of `some evidence' that [appellant] committed the lesser, but not the greater, offense." State v. Shane (1992), 63 Ohio St.3d 630, 632-33. Therefore, the trial court did not err in declining to instruct the jury on negligent assault as a lesser included offense of felonious assault. Consequently, the second assignment of error is overruled.
 {¶ 34} Assignment of Error No. 3:
 {¶ 35} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT IN FAILING TO GRANT APPELLANT'S MOTION TO DISMISS THE CHARGES OF MURDER AND FELONIOUS ASSAULT WITH GUN SPECIFICATIONS PURSUANT TO CRIM.R. 29 AT THE CLOSE OF THE STATE'S CASE."
 {¶ 36} Appellant argues when the state has failed to prove each element of the offenses, the evidence is insufficient to support a guilty finding and the trial court errs as a matter of law when it fails to grant a defendant's motion to dismiss at the close of the state's case.
 {¶ 37} Pursuant to Crim.R. 29, a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Bridgeman
(1978), 55 Ohio St.2d 261.
 {¶ 38} Murder, as defined by R.C. 2903.02(B), provides that:
 {¶ 39} "(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."
 {¶ 40} Felonious assault is defined in R.C. 2903.11 as follows:
 {¶ 41} "(A) No person shall knowingly do either of the following: * * * (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 42} R.C. 2901.22(B) defines "knowingly" as:
 {¶ 43} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."
 {¶ 44} Deadly weapon is defined in R.C. 2923.11(A) as follows:
 {¶ 45} "Deadly weapon means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."
 {¶ 46} The firearm specifications accompanying the charges requires a finding that appellant had a firearm on or about his person or under his control while committing the underlying offense. See R.C.2941.145(A).
 {¶ 47} In its case-in-chief, the state's evidence demonstrated that appellant lifted his shirt to display a weapon of some sort to James. James and appellant were in a liquor establishment at the time appellant lifted his shirt. When appellant and Chico were fighting, James saw appellant remove a pistol from "the right side of his pants." Chico testified that appellant pointed the pistol "towards my chest, * * * and then the gun got moved down toward my stomach." Miller testified that he also witnessed appellant pointing a pistol, which appeared to be a ".380 caliber," at Chico. Miller then "saw [the gunshot] and heard it * * * [f]rom the gun that was in [appellant's] hand." Miller and other witnesses testified to hearing only a single gunshot that night in Mahogany's Bar. Chico testified that a bullet entered and exited his upper thigh. Miller testified to hearing Collier fall onto a booth and then to the floor just after the shot was fired. Evidence demonstrated that Collier was struck in the head and killed by a .380 caliber bullet.
 {¶ 48} Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence upon which a rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. Therefore, the trial court did not err in overruling defendant's motion for a Crim.R. 29 acquittal. Accordingly, the third assignment of error is overruled.
 {¶ 49} Assignment of Error No. 4:
 {¶ 50} "THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT IN ENTERING A VERDICT OF GUILTY TO THE OFFENSES OF FELONIOUS ASSAULT AND INVOLUNTARY MANSLAUGHTER WITH GUN SPECIFICATIONS AS THE VERDICTS ARE NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 51} Appellant argues the trial court abused its discretion in finding him guilty of involuntary manslaughter and felonious assault with gun specifications because the weight of the evidence offered by the parties does not support a guilty finding.
 {¶ 52} When a defendant asserts that a conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52. See, also, State v. Otten (1986),33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id. A conviction is not against the manifest weight of the evidence merely because there is conflicting evidence before the trier of fact. State v. Gilliam (Aug. 12, 1998), Lorain App. No. 97CA006757, at 4.
 {¶ 53} The elements of felonious assault and the accompanying firearm specification were discussed in the third assignment of error. R.C. 2903.04(A), which defines involuntary manslaughter, states: "No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony."
 {¶ 54} Testimony demonstrated that appellant carried a firearm into a liquor establishment while he was under a disability. During an altercation, appellant then pulled the pistol from "the right side of his pants" and then pointed it "towards [Chico's] chest, * * * and then the gun got moved down toward [his] stomach." Appellant admitted he fired one gunshot to "scare those guys up off of me." Witnesses in Mahogany's Bar heard only a single gunshot fired that night. A bullet entered and exited Chico's upper thigh. Collier was then struck in the head and killed by a bullet.
 {¶ 55} Having reviewed the record in full, this Court finds that this appeal does not present extraordinary circumstances requiring the reversal of the jury verdicts as being against the manifest weight of the evidence. While some testimony was divergent, the overall account was consistent in demonstrating that appellant had knowingly possessed a firearm in a liquor establishment, pointed the pistol at Chico, and pulled the trigger. The evidence reveals that the bullet entered and exited Chico's upper thigh before entering Collier's head, killing him. The evidence demonstrates that appellant fired the pistol knowing the consequences that were likely to follow when he admitted he intended to scare Chico by firing the pistol. The evidence does not weigh heavily in favor of appellant, and this Court cannot say that the jury clearly lost its way in resolving conflicts in the testimony. As such, appellant's fourth assignment of error is overruled.
 {¶ 56} Judgment affirmed.
YOUNG and VALEN, JJ., concur.