DECISION AND JUDGMENT ENTRY
Aric Walker, aka Alex Clayton, appeals his conviction for felonious assault, a violation of R.C. 2903.11. Walker asserts that his trial counsel was ineffective because he failed to request jury instructions for a lesser included offense and a related offense of an inferior degree. We disagree because the decision whether to request the jury instructions was part of a sound trial strategy. Walker asserts that his trial counsel was ineffective also because he failed to move for a Crim.R. 29(A) acquittal even though the state did not produce sufficient evidence to convict him. We disagree and find that Walker suffered no prejudice from his trial counsel's failure to move for an acquittal since the state introduced evidence that, if believed, would convince the average mind beyond a reasonable doubt that Walker committed felonious assault. Finally, Walker argues that the state produced insufficient evidence to support his conviction. We disagree because the state introduced evidence that, if believed, would convince the average mind beyond a reasonable doubt that Walker committed felonious assault. Accordingly, we affirm the judgment of the trial court.
 I.
On March 20, 1999, someone shot Steven Tyler outside the Suds Down bar ("the bar") in Chillicothe. After the police issued warrants for the arrest of Chad Zehner and Walker, Walker turned himself in to the Chillicothe Police Department ("CPD.") The state charged Walker with only felonious assault. Walker pled not guilty.
At the jury trial, several eyewitnesses, Tyler, two CPD officers, a CPD detective, and Walker testified.
The eyewitnesses, including Carl Harris ("Carl") and Tyler, testified to essentially the following events. Walker and Zehner arrived at the bar in Zehner's Cadillac. Walker and Zehner approached Jemar Harris ("Jemar.") After exchanging some words, Zehner and Jemar began to circle each other outside of the bar and started a physical altercation. According to the state's witnesses, Walker then, without provocation, punched Carl, who is Jemar's brother. Walker and Carl ended up going through a large window of a nearby business. Walker and Carl ended up on the ground and several men intervened and began to hit and kick Walker. After Walker and Carl broke the window, Zehner and Jemar stopped fighting. Zehner ran to his Cadillac and grabbed a handgun from the trunk and fired the gun. The witnesses did not agree on how many times Zehner fired the gun. Their testimony ranged from one to four shots, with the majority of the witnesses testifying that Zehner fired the gun one or two times. The gunshots caused the intervening men to stop attacking Walker, and Walker ran to Zehner. Zehner threw the gun to Walker, who began firing into the crowd that had gathered. One witness testified that Walker fired the gun about two to four times. The rest of the witnesses were not sure how many times Walker fired the gun. None of the witnesses saw Tyler get shot, or saw who shot Tyler.
Carl, who is Tyler's cousin, further testified that when he heard the first gunshot, he quickly found his glasses, which he had lost in the struggle with Walker, and got up and began to run. Carl turned to see Walker shooting at him. Carl began to weave through the crowd in an attempt to avoid the gunshots. Carl heard bullets around him and felt something hit his shoe. As he was running, Carl pushed Tyler, who was still standing, out of his way. On cross-examination, Carl admitted that he had been convicted of felony drug abuse.
Tyler further testified that after Zehner fired the gun, he began running, but fell to the ground because he was shot. Tyler saw Carl right behind him when he was shot. Tyler heard a total of seven to eight gunshots including three after he was hit. Tyler testified that he was running away from the shooter when he was shot, but admitted that the entrance wound was on his stomach and the exit wound was on his buttock.
Tyler suffered injury to his bladder, small intestine, and large intestine. He remained in the hospital for eight days and was still suffering from the injury at the time of the trial.
CPD officer Keith Washburn testified that he was responding to a report of a fight at the bar when he heard two loud pops come from that area. He saw Zehner's car leaving the area and began to pursue it. As he activated his cruiser's emergency lights, Zehner's car began to accelerate. After a short pursuit, Washburn lost Zehner's car in traffic.
CPD officer David Buchanan testified that after unsuccessfully searching for Zehner's car, he began to search for the gun used in the shooting in the area where Washburn lost sight of the car. Buchanan found a nine millimeter handgun in a yard along the street where Washburn last saw the car.
CPD Detective James Lowe testified that he found seven spent casings in a twenty foot wide area outside the bar. One casing was at the entrance to the alley to the side of the bar, three were near the sidewalk and three were in the alley. Lowe interviewed Walker after he turned himself in to CPD. According to Lowe, Walker first identified himself as Alex Clayton, but later admitted that he was Aric Walker. After Walker signed a waiver of rights, Lowe began to question him about the incident at the bar. According to Lowe, Walker told him the following version of the events that occurred the night Tyler was shot. Walker accompanied Zehner to the bar. As Zehner and Jemar began to fight, someone threw him into a glass window, then threw him to the ground and punched and kicked him. Suddenly everyone stopped attacking him and he looked up to find Zehner holding a gun. Walker got up, went over to Zehner, took the gun, and then fired from one to five shots into the crowd. Walker also told Lowe that he and Zehner left in Zehner's Cadillac and once he did not see any police behind him, he threw the gun from the window.
On cross-examination, Lowe testified that he found blood near the window that was broken. He admitted that he did not have the blood tested. When Lowe questioned Walker, he observed a two to three inch long cut on Walker's back. Walker told Lowe that he was injured when he was thrown into the window. Lowe admitted that his written report of his conversation with Walker indicates that Walker told him that he shot the gun toward the crowd of people and also in the air. Lowe admitted that since Tyler had been shot only once, both Zehner and Walker could not have shot him.
Walker testified that on the night he was shot, he received a call from Zehner inviting him to play pool and have a drink at the bar. Walker denied knowing that Zehner had a gun in the trunk of his car. He also denied knowing that Zehner and Jemar had been arguing earlier in the day. Once he and Zehner arrived at the bar, he told Jemar and the crowd that Zehner and Jemar should fight one on one. Walker denied hitting Carl, but admitted to putting his hands up and repeating that it was "one on one." According to Walker, at least three people rushed him and threw him into the glass window. He suffered a cut to his back. Someone then pulled him and Carl out of the window. Carl stayed on top of Walker, and others began to hit and kick Walker. Walker then heard gunshots and he got up and headed toward Zehner's car, when he saw Zehner with the gun. Walker admitted to firing the gun because he wanted the people to stop beating and kicking him. He denied firing the gun into the crowd or at any person. Walker admitted that he threw the gun out of the window once the CPD were no longer following the car.
After receiving instructions only on felonious assault, the jury convicted Walker. Walker appeals this conviction, asserting the following errors:
 I. APPELLANT WAS DEPRIVED OF HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.
 II. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 II.
In his first assignment of error, Walker argues that his
trial counsel was ineffective because (1) he failed to request jury instructions on the lesser included offense of negligent assault and the lesser charged offense of aggravated assault, and (2) he failed to move for a directed verdict under Crim.R. 29.
The Sixth Amendment to the United States Constitution provides that in all crimes and prosecutions, the accused shall enjoy the right to have the assistance of counsel for his defense. In State v. Ballew (1996), 76 Ohio St.3d 244, 255, the Ohio Supreme Court stated the following regarding ineffective assistance of counsel:
 Reversal of a conviction or sentence based upon ineffective assistance requires (a) deficient performance, "errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment"; and (b) prejudice, "errors * * * so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington
(1984), 466 U.S. 668, 687. As to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland
at 689.
Furthermore, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. The United States Supreme Court has noted that "there can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." United States v. Hasting (1983), 461 U.S. 499, 508-509.
 A.
Walker argues that his trial counsel was ineffective because he failed to request that the trial court instruct the jury on aggravated assault, an offense of an inferior degree, and on negligent assault, a lesser included offense.
Aggravated assault, a violation of R.C. 2903.12, contains all of the elements of felonious assault and the additional mitigating element of serious provocation. State v. Deem
(1988), 40 Ohio St.3d 205, paragraph four of the syllabus. When, in a trial for felonious assault, there is sufficient evidence of serious provocation, an instruction on aggravated assault is required. Id. However, in Deem, the trial counsel requested the jury instruction on aggravated assault.
Negligent assault, a violation of R.C. 2903.14, is a lesser included offense of felonious assault. State v. Wong (1994),95 Ohio App.3d 39, 54.
When failure to request instructions on lesser included offenses is a matter of trial strategy, it does not establish ineffective assistance of counsel. State v. Griffie (1996),74 Ohio St.3d 332, 333, citing, State v. Clayton (1980), 62 Ohio St.2d 45. We see no reason why failure to request instructions on offense of an inferior degree can not also be a matter of trial strategy.
After a thorough examination of the record, we find that trial counsel's strategy was to persuade the jury that Zehner, not Walker, shot Tyler, in an attempt to win an acquittal for Walker. While some evidence supports appellate counsel's assertion that Walker may have been provoked in shooting Tyler or may have negligently shot Tyler, the state's evidence that Walker shot Tyler was less than unequivocal and Walker denied shooting Tyler. Thus, Walker has not overcome the presumption that trial counsel's decision to argue for an acquittal instead of requesting jury instructions on the lesser included offense and the related offense of an inferior degree was sound trial strategy. Even a questionable trial strategy is not ineffective assistance of counsel. State v. Smith (2000), 87 Ohio St.3d 424,441. Accordingly, we find that Walker's trial counsel's decision declining to request the trial court to instruct the jury on the offenses of negligent assault and aggravated assault was sound trial strategy, albeit unsuccessful. Thus, Walker's counsel was not ineffective in this regard.
 B.
Walker argues that his trial counsel was ineffective also because he failed to move for a directed verdict pursuant to Crim.R. 29(A). He argues that it was physically impossible for any shots fired by Walker to have injured Tyler.
When we review the sufficiency of the evidence, we must examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
R.C. 2903.11 provides that "(A) No person shall knowingly * * * cause serious physical harm to another * * *"
Walker argues that it was physically impossible for any shots fired by Walker to have injured Tyler. He asserts that the state established at trial that Tyler was shot from the front. The bullet entered Tyler's stomach and exited through his buttocks. Walker focuses on Tyler's testimony to support this argument. Tyler testified that he was facing Zehner during the first shot or two, but then turned to run and never faced Walker when he was firing the gun.
However, Carl's testimony, if believed, explains how Tyler could have been shot in the front by Walker. Carl testified that he heard and felt bullets pass around him just before and just after he pushed Tyler as he was running from Walker's shots. Carl's action of pushing Tyler could have spun Tyler around, explaining the path of the bullet.
Moreover, Tyler testified that he heard only three shots after he was hit. Most of the eyewitnesses testified that Zehner fired only one to two shots. Lowe testified that he found a total of seven spent shell casings, indicating that the gun was fired a total of seven times. Thus, the evidence indicates that Tyler was probably hit by the second or third shot Walker fired. We find that Walker's conviction is supported by evidence that, if believed, would convince the average mind of Walker's guilt beyond a reasonable doubt Thus, Walker's conviction is supported by sufficient evidence. Therefore, Walker was not prejudiced by his trial counsel's failure to move for a directed verdict. Accordingly, we overrule his first assignment of error.
 III.
In his second assignment of error, Walker asserts that his conviction is against the manifest weight of the evidence. However, the substance of his argument asserts that his conviction is not supported by sufficient evidence. Walker does not argue in his brief that his conviction is against the manifest weight of the evidence. "The legal concepts of sufficiency of the evidence and weight of the evidence are quantitatively and qualitatively different." State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus.
Because Walker argues only that his conviction is not supported by sufficient evidence, we decline to review whether his conviction is against the manifest weight of the evidence. See App.R. 12(A)(2) and App.R. 16(A)(7).
For the reasons outlined in Section II B of our opinion, we find that Walker's conviction is supported by sufficient evidence and overrule his second assignment of error.
 IV.
In sum, we overrule both of Walker's assignments of error and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
EVANS, J. and HARSHA, J.: Concur in Judgment and Opinion.
 BY: _________________________________ ROGER L. KLINE, Presiding Judge