OPINION
Defendant-appellant, Johnny Phillips, appeals his conviction in the Preble County Court of Common Pleas for felonious assault.
Appellant was indicted in October 2000 on one count of felonious assault in violation of R.C. 2903.11(A)(2), and one count of attempted murder in violation of R.C. 2903.02(A) and 2923.02(A). Each count included a gun specification under R.C. 2941.145. A jury trial held on December 12-13, 2000 revealed the following facts:
On September 12, 2000, appellant was at home with his girlfriend, Maria Conley ("Conley"), and their five-year-old son. Appellant and Conley began to argue. They stopped arguing for some time while they waited for their son to fall asleep. Once the child fell asleep, the arguing resumed. Appellant and Conley presented different accounts as to what happened next. Conley essentially testified that appellant deliberately put a gun to her head and shot her, while appellant claimed that the shooting was an accident that occurred after Conley tried to take the gun from him. According to Conley, she told appellant that she was going to leave the next day, taking their son with her. Appellant said that if she left, he wanted joint custody. Conley refused to consider joint custody. Appellant angrily told Conley, "Well, if you take my son, I'll kill you." The arguing stopped for five to ten minutes. Appellant then got up from his chair and went into the bedroom. When appellant came out of the bedroom, Conley saw that he was holding a gun in his right hand. As he walked toward her, Conley asked appellant "what in the hell he was doing." Appellant came closer, put the gun to Conley's head and said, "I'll just kill you, bitch." Conley began kicking appellant in an attempt to get him away from her. She heard the gun go off and saw smoke. When she touched her head, she realized blood was running down her head and face. Conley ran out of the house and to appellant's parent's house, which was nearby, to call 911.
Appellant's version of the confrontation differed greatly from Conley's. According to appellant, he decided it would be best if he left the house and gave them some time to cool down. Appellant decided to go to his parents' home. Appellant went into his and Conley's bedroom to get his father's gun to return it to him. Appellant put the gun in his waistband and pulled his shirt over it. He came into the living room and bent over the coffee table to get his cigarettes and lighter, but the gun was sticking him in the side, so he removed it. According to appellant, Conley yelled at him for having the gun. Appellant, with the gun in his hand, pointed his index finger at Conley and told her to leave him alone and that he was leaving. Conley grabbed for the gun, there was a brief struggle, and the gun somehow discharged.
Other evidence presented at trial included testimony that police and paramedics arrived at appellant's parents' house, and that Conley was flown to the hospital where it was discovered that the bullet entered into Conley's left temple, but did not penetrate her skull or brain. The bullet exited one and a half to two inches behind the entry point. According to the first police officer who arrived on the scene, Conley was waiting on the porch and told him that Johnny had shot her. The officer turned to appellant and his father, who were also on the porch, and asked them if they knew who shot Conley. Appellant responded, "I shot her, the fucking bitch." Another police officer testified that while he was conducting blood alcohol tests on appellant, appellant said that he wanted to tell his side of the story. Appellant then told the officer that he and Conley were arguing and that she did not want him to go to bed. Appellant stated he got scared when Conley threatened him. Appellant told Conley that he was leaving and taking the gun so she would not hurt him. Conley grabbed for the gun, they wrestled, and the gun went off.
On December 13, 2000, a jury acquitted appellant of attempted murder but found him guilty of felonious assault as charged. Appellant was subsequently sentenced accordingly. This appeal follows in which appellant raises the following four assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ABUSED IT'S [SIC] DISCRETION WHEN IT OVERRULED THE OBJECTION OF THE DEFENDANTS [SIC] AND ADMITTED EVIDENCE OF "OTHER ACTS" UNDER EVIDENCE RULE 404(B) WHEN THE STATE FAILED TO DEMONSTRATE "SUBSTANTIAL PROOF" THAT THE ALLEGED PRIOR ACTS OCCURRED.
Assignment of Error No. 2:
 THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO INSTRUCT THE JURY ON THE LESSER INCLUDED OFFENSE OF "NEGLIGENT ASSAULT[,]" R.C. 2903.14, A MISDEMEANOR OF THE THIRD DEGREE.
Assignment of Error No. 3:
 THE TRIAL COURT EERRED WHEN IT DEFINED THE MENTAL ELEMENT FOR THE CRIME OF FELONIOUS ASSAULT BY USING, IN THE JURY INSTRUCTIONS [,] CIVIL NEGLIGENCE LANGUAGE.
Assignment of Error No. 4:
 THE DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In his first assignment of error, appellant argues that the trial court erred by allowing evidence of other bad acts under Evid.R. 404(B) without substantial proof that the acts actually occurred. To rebut appellant's testimony that he only got the gun to return it to his father, and that he did not intentionally place the gun at Conley's head, the state had Conley testify that on two previous occasions when she and appellant fought, appellant got a rifle and fired shots into the ceiling to end the arguments. In one of the instances, appellant first pointed the rifle at Conley before shooting into the ceiling.
It is well-established that the admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v.Robb (2000), 88 Ohio St.3d 59, 68, quoting State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. Absent an abuse of discretion, as well as a showing that the accused has suffered material prejudice, an appellate court will not disturb a ruling by a trial court as to the admissibility of evidence. State v. Martin (1985),19 Ohio St.3d 122, 129. An abuse of discretion connotes more than an error of law or judgment, and implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
Evid.R. 404 generally prohibits the introduction of evidence of past crimes, wrongs, or acts in order to show that the defendant has a propensity for crime or that his character is in conformity with the other acts. State v. Mann (1985), 19 Ohio St.3d 34, paragraph one of the syllabus. However, the evidence "may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid.R. 404(B). Such evidence is admissible if it meets one of the above requirements and there is substantial proof that the alleged other acts were committed by the defendant. State v. Lowe (1994), 69 Ohio St.3d 527,530. In addition, where such evidence is admitted, the jury should be instructed as to the limited purpose for which the evidence is admitted, and admonished not to consider the evidence as any proof that the accused did any act alleged in the indictment. State v. Crafton (1968),15 Ohio App.2d 160, 165-166.
Appellant first argues that Conley's testimony regarding the previous two incidents was not sufficient to establish "substantial proof" that the incidents occurred. Appellant contends that Conley did not contact the police, abuse shelters, or any other agencies as a result of these two prior incidents, nor did she present pictures of the damage. Appellant also contends that Conley admitted doing illegal substances during that period of her life. Appellant argues that with no corroboration that these incidents actually occurred, her testimony was not admissible.
However, we find that it is not necessary to present independent evidence of "other acts," and that a victim's testimony alone can constitute "substantial proof" of the other acts. See State v. Jackson
(Dec. 8, 1994), Franklin App. No. 94APA04-531, unreported; State v.Smith (May 14, 2001), Butler App. No. CA2000-05-093, unreported. Appellant's attorney cross-examined Conley about the incidents and questioned the lack of corroboration for her story.
In addition, the trial court clearly instructed the jury on how to evaluate the evidence. Immediately after Conley's testimony regarding the two incidents, the trial court gave the jury the following limiting instruction:
 The evidence you just heard about the commission of other acts, other than the acts involved in the offenses charged in this case, is essentially called other acts evidence. That evidence was received and admitted, allowed by the Court for a limited purpose.
 It was not received, and you may not consider it, to prove the character of the Defendant in order to show that he acted in conformity with that character.
 If you find the evidence of other acts is true, and that the Defendant committed those other acts, * * * you may consider that evidence only for the purpose of deciding whether it proves the absence of accident or the Defendant's motive, intent, or purpose to commit the offense charged in this trial.
 The court thus clearly instructed the jury to first find that "the evidence of other acts is true, and that the Defendant committed those other acts" before considering the evidence for the limited purpose of motive, intent, or purpose, or absence of accident.
Appellant also argues that even assuming there was substantial proof that the prior acts occurred, it was error to admit the testimony under Evid.R. 404(B) because the testimony does not meet one of the requirements listed and serves only to inflame the passions of the jury. We disagree. Appellant claimed the shooting was accidental. "When the issue at trial is whether the defendant accidentally or intentionally caused the harm to the victim, then other acts of violence between the defendant and the victim are relevant which tend to prove that the present incident was not accidental." State v. Muncey (Feb. 8, 1999), Madison App. No. CA98-03-013, unreported, at 7; Jackson, Franklin App. No. 94APA04-531, unreported. Conley's testimony regarding the two incidents contradicted appellant's accident claim and was admissible for the limited purpose of proving Conley's injuries were not the result of an accident. The trial court therefore did not abuse its discretion in admitting evidence of appellant's prior acts. Appellant's first assignment of error is overruled.
In his second assignment of error, appellant argues that the trial court erred when it failed to instruct the jury on the lesser included offense of negligent assault. Because appellant did not request the jury instruction before the trial court and did not object when the jury instructions were read, we review this assignment of error for plain error.
Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." A plain error within the meaning of Crim.R. 52(B) is an obvious error which is prejudicial to an accused, although neither objected to nor affirmatively waived, which, if allowed to stand, would have a substantial adverse impact on the integrity of and public confidence in judicial proceedings. State v. Craft (1977),52 Ohio App.2d 1, 7. Under a plain error analysis, it must be clear from the record that an error was committed, and that except for the error, the result of the trial clearly would have been otherwise. State v.Bock (1984), 16 Ohio App.3d 146, 150. The plain error rule must be applied with the utmost caution and invoked only under exceptional circumstances to prevent a manifest miscarriage of justice. State v.Cooperrider (1983), 4 Ohio St.3d 226, 227.
Negligent assault is a lesser included crime of felonious assault.State v. Wong (1994), 95 Ohio App.3d 39, 54. However, the fact "that an offense [is] a lesser included offense of another offense does not mean that a court must instruct on both offenses where the greater offense is charged." State v. Wilkins_(1980), 64 Ohio St.2d 382, 387. A charge on the lesser included offense is required only if the evidence at trial would reasonably support both an acquittal on the greater crime charged and a conviction on the lesser included offense. State v. Thomas
(1988), 40 Ohio St.3d 213, paragraph two of the syllabus.
The difference between felonious assault and negligent assault is the mens rea needed to be convicted of the crime[1]. Wong,95 Ohio App.3d at 54. To establish felonious assault, the state must prove that the defendant acted knowingly. Pursuant to R.C.2901.22(B):
 A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.
To establish negligent assault, the state must prove that the defendant acted negligently. Pursuant to R.C. 2901.22(D):
 A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist.
Appellant argues that the evidence at trial regarding the bullet trajectory, the powder burns, the lack of gunpowder residue on appellant's hands, the failure to test Conley's hands for gunpowder, and the failure to test Conley for evidence of illegal substances in her system could have caused the jury to return a not guilty verdict as to felonious assault and a guilty verdict as to negligent assault. However, not all of this evidence was inconsistent with the state's theory that appellant acted knowingly.
The record contains more than adequate evidence to support a finding that appellant acted knowingly, including Conley's testimony, the testimony of the police officers, and the physical evidence. Appellant has failed to demonstrate that based on the evidence above, the jury could have found him not guilty of felonious assault, but guilty of negligent assault. On these facts, we cannot say that it is clear from the record that an error was committed and that, except for the error, the result of the trial clearly would have been otherwise. Accordingly, we find the trial court did not commit plain error by failing to give a jury instruction on the lesser included offense. Appellant's second assignment of error is overruled.
In his third assignment of error, appellant argues that the trial court erred "when it defined the mental element for the crime of felonious assault by using, in the jury instructions, civil negligence language." In instructing the jury on felonious assault, the trial court stated that:
 The Defendant's responsibility is not limited to the immediate or most obvious result of the Defendant's act or failure to act. The Defendant is also responsible for the natural and foreseeable consequences that follow, in the ordinary course of events, from the act or failure to act.
Appellant contends that in providing the foregoing instruction, the trial court lowered the level of mental culpability required to convict appellant of felonious assault and thus made it easier for the jury to convict appellant than is required by law.
"A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge."State v. Jones (2001), 91 Ohio St.3d 335, 348-349, quoting State v.Price (1979), 60 Ohio St.2d 136. A reviewing court must consider the whole charge as given rather than separate, individual portions of a charge. State v. Baker (1993), 92 Ohio App.3d 516, 536.
In the case at bar, the trial court gave the standard Ohio Jury Instruction on felonious assault. See 4 Ohio Jury Instructions (2001) 146-22, Section 503.11(A). The trial court correctly instructed the jury on the required mental element of "knowingly," as stated in R.C.2901.22(B). Following the standard jury instructions, the trial court then gave the challenged instruction on causation. Reviewing the trial court's jury instructions as a whole, we find that the trial court correctly instructed the jury on the "knowingly" element needed for felonious assault. The jury could not have been misled or confused that a lesser mens rea was required. State v. Hollis (May 15, 1997), Cuyahoga App. No. 70781, 1997 WL 253172, at *12, unreported; see, also, State v.Kehoe (1999), 133 Ohio App.3d 591. We therefore find that the jury instructions as a whole were proper. Appellant's third assignment of error is overruled.
In his fourth assignment of error, appellant argues that his conviction was against the manifest weight of the evidence. An appellate court will not reverse a judgment as against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the fact finder's resolution of any conflicting testimony. State v. Thompkins (1997),78 Ohio St.3d 380, 389. The standard for reversal of a verdict for manifest weight of the evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Thompkins at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172,175. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of the witnesses and the weight to be given to the evidence.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
After a thorough review of the record, we find that appellant's conviction was not against the manifest weight of the evidence. The record contains a considerable amount of evidence from which the jury could conclude that appellant was guilty of felonious assault. Appellant's fourth assignment of error is overruled.
Judgment affirmed.
VALEN and POWELL, JJ., concur.
[1] R.C. 2903.11 governs felonious assault and provides in relevant part that "[n]o person shall knowingly * * * [c]ause serious physical harm to another[.]" R.C. 2903.11(A)(1). R.C. 2903.14(A) governs negligent assault and provides that "[n]o person shall negligently, by means of a deadly weapon or dangerous ordnance * * *, cause physical harm to another[.]"