OPINION
{¶ 1} Appellant, Peter Bucci, appeals from the May 1, 2001 judgment entry of the Lake County Court of Common Pleas, in which he was found guilty of two counts of felonious assault and was sentenced to three years in prison.
 {¶ 2} On December 8, 2000, appellant was indicted on two counts of felonious assault, in violation of R.C. 2903.11(A)(1) and (2), both felonies of the second degree. He waived his right to be present at the arraignment and entered a plea of not guilty to the charges on December 29, 2000. A jury trial commenced on March 19, 2001.
 {¶ 3} The evidence revealed that on September 9, 2000, appellant and his friend, Joseph Caruso ("Caruso"), were at the Bogside Bar ("the bar") in the city of Willowick, Lake County, Ohio. Mark Mytro ("the victim"), his wife, Laurie Mytro ("Laurie"), and their friend, Timothy Summers ("Summers"), were also at the bar. Appellant and Caruso had never met the victim, Laurie, or Summers, but at some point, the five of them began playing a bowling game on a machine located in the bar. It was agreed that the losing team would buy the next round of drinks for the winning team. Appellant lost the game and bought the next round of drinks. The group left the game area and proceeded to the bar area. Everyone was having fun, and the conversation was lighthearted.
 {¶ 4} While conversing at the bar, the discussion turned to the topic of Italy as that was appellant's heritage. The victim asked appellant if he went to his mother's house every Sunday for dinner. Laurie and the victim commented about knowing a man "that was Italian and *** had to go to [his] mom's house every Sunday *** and she made up sauce and she put hard boiled eggs in it ***." Laurie thought that was strange, but appellant mentioned that his mother also put hard-boiled eggs in her sauce.[1] The victim told appellant to "tell your mom [the victim] said hey." After that comment, Laurie related that appellant turned "very, very angry and he looked at [the victim] and he started calling him, you know, a mother F'er and you know, don't talk about my mom ***." Laurie testified that "because of the way he looked [she] was scared."
 {¶ 5} Appellant began yelling at the victim. The victim was astonished because he did not know what had made appellant so angry. Appellant began asking the victim to step outside, which caught the victim off guard. The next thing the victim recalled was that appellant hit him. Appellant had struck the victim in the left temple and on the top of the head. Appellant did not know what he had been hit with, but it was later discovered that he was struck with a nearly full beer bottle. The victim stated that as a result of the blow, he hit the ground and his glasses came off of his face. When the victim got up, he explained that he "wanted to know where [appellant] was at so [appellant] couldn't hit [him] anymore." Summers, who was not a participant in the spaghetti sauce conversation, took the victim outside.
 {¶ 6} Meanwhile, Laurie, who had been hit by glass, went to the bathroom to flush out her face. She then looked for the victim, who was outside with Summers. When she saw the victim, "blood was pouring down [his] face like someone dumped a bucket of it over his face ***." Laurie called 9-1-1. As a result of his injures, the victim received twenty-eight stitches. Summers related that immediately after the striking the victim with the beer bottle, appellant "ran out [of] the bar."
 {¶ 7} Officers from the Willowick Police Department arrived at the scene and took statements. As a result of information obtained, on September 10, 2000, they went to appellant's residence and transported him to the police station where he was read his Miranda rights. Appellant admitted being at the bar, but initially denied being involved in any physical altercation. Appellant told one of the police officers that during a conversation with the victim and Laurie, the victim "was making derogatory comments about his mother and that he did not appreciate those and he got upset with [the victim]." However, according to the officer, appellant "did not know specifically what was said, he just knew that it was derogatory and that it was towards his mother." The officer added that appellant "was unhappy with the comments that [were] made and that he had picked up a beer bottle and hit [the victim] with it *** [because] he didn't want [the victim] to get the first punch in." The officer also stated that appellant told him that the victim "didn't do anything that would provoke him."
 {¶ 8} At the close of the state's evidence, appellant moved for a Crim.R. 29 acquittal, which was overruled. The defense presented no evidence. Appellant's attorney also requested that the trial court instruct the jury on the lesser included offense of negligent assault be given in connection with the count involving the deadly weapon, and an instruction for assault be given in connection with the count involving serious physical harm. The requests were denied. The jury returned a verdict of guilty on both counts of felonious assault on March 20, 2001. Sentencing was deferred to a later date. In an entry dated May 1, 2001, the trial court sentenced appellant to a term of three years in prison. It is from that entry that appellant timely filed the instant appeal and now assigns the following as error:
 {¶ 9} "[1.] The trial court committed reversible error when it refused to submit [appellant's] proposed lesser included jury instructions in violation of [appellant's] rights to due process and fair trial as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution.
 {¶ 10} "[2.] The trial court erred to the prejudice of [appellant] when it denied his motion for acquittal made pursuant to Crim.R. 29.
 {¶ 11} "[3.] The trial court erred to the prejudice of [appellant] when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 12} For his first assignment of error, appellant claims that the trial court erred when it did not submit as jury instructions his proposed lesser included offense of negligent assault for count one and assault for count two.
 {¶ 13} An offense may be considered a lesser included offense of another if: (1) the offense carries a lesser penalty than the other; (2) the greater offense cannot ever be committed without the lesser offense also being committed; and (3) some element of the greater offense is not required to prove the commission of the lesser offense. State v. Deem
(1988), 40 Ohio St.3d 205, paragraph three of the syllabus; State v.Hill (June 15, 2001), 11th Dist. No. 2000-L-021, 2001 WL 687450, at 2. Although an offense may be statutorily defined as a lesser included offense, an instruction to the jury on the lesser offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser offense. State v. Thomas (1988), 40 Ohio St.3d 213, paragraph two of the syllabus; Hill, supra, at 3.
 {¶ 14} "Negligent assault" is defined by R.C. 2903.14:
 {¶ 15} "(A) No person shall negligently, by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code, cause physical harm to another ***.
 {¶ 16} "(B) Whoever violates this section is guilty of negligent assault, a misdemeanor of the third degree."
 {¶ 17} Negligent assault is a lesser included offense of felonious assault because all three prongs of the Deem test are satisfied. "Negligent assault carries a lesser penalty than felonious assault, satisfying the first prong of the test. The only statutory difference between felonious assault and negligent assault is the mens rea necessary to be convicted of the crime." State v. Wong (1994), 95 Ohio App.3d 39,54. The second and third prongs are established since the greater offense of felonious assault cannot be committed without the lesser offense of negligent assault being committed, and the "knowingly" element of felonious assault is not required to prove the lesser offense. Id.
 {¶ 18} Thus, an instruction to the jury on a lesser offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser offense. Thomas, supra, at paragraph two of the syllabus. To establish felonious assault, the state must prove the defendant acted knowingly, which is defined as regardless of his purpose, he was aware that his conduct would probably cause a certain result or be of a certain nature. R.C. 2901.22(B).
 {¶ 19} To be convicted of negligent assault, with respect to the mens rea element, the state needs to prove that the defendant acted negligently:
 {¶ 20} "A person acts negligently when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that his conduct may cause a certain result or may be of a certain nature. A person is negligent with respect to circumstances when, because of a substantial lapse from due care, he fails to perceive or avoid a risk that such circumstances may exist." R.C. 2901.22(D).
 {¶ 21} In the case at bar, appellant recalled the events that transpired on September 9, 2000, in his statement to the police. He admitted to the officer that he struck the victim on the head with a beer bottle. Based on all of the testimony at the trial, we conclude that there was no support for the position that the incident was the result of negligence. Instead, appellant's conduct was knowing and not negligent because he picked up a nearly full beer bottle and intentionally struck the victim on the head, which resulted in the victim being knocked off of a bar stool and lacerations that required stitches. Therefore, there was not sufficient evidence to show that appellant could have been convicted of the lesser offense of negligent assault. Further, the cumulative effect of all of the state's witnesses supported the decision of the trial court to decline the requested jury instruction on negligent assault. The instruction was not required since the jury could not have reasonably acquitted appellant of felonious assault while convicting him only of negligent assault. Hence, an instruction on the lesser included offense of negligent assault would have been improper.
 {¶ 22} Appellant also argues that he should have received an instruction on the lesser included offense of assault. Felonious assault is defined as knowingly causing serious physical harm to another. R.C.2903.11(A)(1). On the other hand, assault, pursuant to R.C. 2903.13(A) and (B), is defined as knowingly causing or attempting to cause physical harm to another or recklessly causing serious physical harm to another. As previously mentioned, pursuant to Thomas, an instruction on a lesser included offense of assault would be required if the evidence presented reasonably supported an acquittal on the crime charged and a conviction on the lesser included offense. See, also, State v. Calabrese (Feb. 9, 1996), 11th Dist. No. 95-L-054, 1996 WL 200578, at 5.
 {¶ 23} Since appellant admitted to the officer hitting the victim over the head with a beer bottle, it is necessary to focus on the crucial distinction between felonious assault and assault with regard to the harm element in determining whether the evidential table in this case required the trial court to honor appellant's request to also instruct the jury on the crime of assault. The crime of felonious assault invokes an establishment of serious physical harm. R.C. 2901.01(A)(5) defines "[s]erious physical harm to persons" to include in pertinent part:
 {¶ 24} "(c) [a]ny physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 25} "(d) [a]ny physical harm that involves some permanent disfigurement, or that involves some temporary, serious disfigurement; ***"
 {¶ 26} The victim testified at trial as to the nature and extent of the injuries he received. He suffered lacerations that required twenty-eight stitches as a result of the incident with appellant. Further, at the time of trial, the victim testified that he had a scar from the incident. Due to the seriousness of the injuries to the victim, the trial court did not err when it refused to instruct the jury on the lesser included offense of assault to the charge of felonious assault. Appellant's first assignment of error is without merit.
 {¶ 27} As appellant's second and third assignments of error raise questions regarding the adequacy of the evidence, they will be addressed in a consolidated fashion. Under his second assignment of error, appellant argues that the trial court erred by denying his motion for acquittal since the state failed to prove beyond a reasonable doubt that appellant "knowingly" caused physical harm to another with a deadly weapon or that appellant "knowingly" caused serious physical harm to anyone. Hence, appellant contends that the state failed to present sufficient evidence, beyond a reasonable doubt, that appellant was guilty of felonious assault. In his third assignment of error, he asserts that his conviction was against the manifest weight of the evidence.
 {¶ 28} The Supreme Court of Ohio established the test for determining whether a motion for acquittal is properly denied in Statev. Bridgeman (1978), 55 Ohio St.2d 261, syllabus, which states that "[p]ursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt."
 {¶ 29} Hence, when an appellant makes a Crim.R. 29 motion, he or she is challenging the sufficiency of the evidence introduced by the state. As this court stated in State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 WL 738452, at 4-5:
 {¶ 30} "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented.
 {¶ 31} "`"(***)(T)he test (for sufficiency of the evidence) is whether after viewing the probative evidence and the inference[s] drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all of the elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiryabout due process. It raises a question of law, the resolution of whichdoes not allow the court to weigh the evidence. ***'"
 {¶ 32} "In other words, the standard to be applied on a question concerning sufficiency is: when viewing the evidence `in a light most favorable to the prosecution,' *** `(a) reviewing court (should) not reverse a jury verdict where there is substantial evidence upon which the jury could reasonably conclude that all of the elements of an offense have been proven beyond a reasonable doubt.' ***" (Emphasis sic.) (Citations omitted.)
 {¶ 33} A reviewing court must look to the evidence presented to assess whether the state offered evidence on each statutory element of the offense, so that a rational trier of fact may infer that the offense was committed beyond a reasonable doubt. State v. March (July 16, 1999), 11th Dist. No. 98-L-065, 1999 WL 535675, at 3. The evidence is to be viewed in a light most favorable to the prosecution when conducting this inquiry. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Further, the verdict will not be disturbed on appeal unless the reviewing court finds that reasonable minds could not have arrived at the conclusion reached by the trier of fact. State v. Dennis (1997),79 Ohio St.3d 421, 430.
 {¶ 34} In the instant matter, appellant was charged with felonious assault, which is defined in R.C. 2903.11(A) as follows:
 {¶ 35} "(A) No person shall knowingly do either of the following:
 {¶ 36} "(1) Cause serious physical harm to another or to another's unborn;
 {¶ 37} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 38} Knowingly is defined in R.C. 2901.22(B) as:
 {¶ 39} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 40} Here, the record before us reveals evidence which, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find all the essential elements of felonious assault beyond a reasonable doubt. Appellant took a nearly full beer bottle and struck the victim over the head. Besides making an alleged derogatory comment about appellant's mother, the victim did nothing to provoke the attack. The victim testified that the only thing he said was "tell your mom I said hey." Laurie corroborated the testimony of the victim as to the statement. However, appellant was unable to state the remark made that angered him when he was questioned by police officers. He did admit that the victim did not provoke him, and he also stated that he did not want the victim to get in the first punch.
 {¶ 41} Summers was not paying attention to the conversation between the victim, Laurie, and appellant, but he heard the commotion and noticed the victim on the floor and took him outside. Caruso, appellant's friend, was involved in cleaning up the glass after the attack. As a result of the incident, the victim received twenty-eight stitches. Based on the evidence before us, we conclude appellant acted knowingly, regardless of his purpose, because he should have been aware that striking another person with a nearly full beer bottle would result in serious injury to that person. Appellant's conviction was supported by sufficient evidence with respect to the second assignment of error.
 {¶ 42} However, even though evidence may be sufficient to sustain a guilty verdict, the issue of manifest weight requires a different type of analysis. Schlee, supra, at 4-5. The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. A reviewing court, when addressing whether a verdict is against the manifest weight of the evidence, reviews "`the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. ***'" State v. Davis (1988), 49 Ohio App.3d 109, 113.
 {¶ 43} In the case at hand, there was competent, credible evidence presented by the state at the trial to support the conviction and demonstrate that appellant knowingly caused serious physical harm to the victim. The character of this evidence was not incredible, and the jury did not lose its way. There was ample direct evidence presented by the victim, Laurie, Summers, Caruso, and the police officer that spoke with appellant. The evidence was uncontradicted that appellant struck the victim on the head with a nearly full beer bottle. Again, appellant admitted to the officer that he used a beer bottle as a weapon to strike the victim over the head, and thus, knowingly caused serious harm to the victim. Therefore, the trier of fact could reasonably conclude that appellant committed a felonious assault. The verdict was not against the manifest weight of the evidence. Since the evidence introduced at trial was sufficient as a matter of law, and the conviction was not against the manifest weight of the evidence, we affirm appellant's conviction. Appellant's third assignment of error lacks merit.
 {¶ 44} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
DIANE V. GRENDELL, J.,
MARY DEGENARO, J., Seventh Appellate District, sitting by assignment, concur.
[1] Laurie testified that the conversation was "normal like friends talk." Also, according to the victim, they were "just talking, not knowing one another it was like ice breaking *** we were just talking that was it."